RECORD NO. 13-4041

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ROBERT LEON LECRAFT,

*Defendant-Appellant.*

───────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT GREENVILLE

───────────────

**OPENING BRIEF OF APPELLANT
ROBERT LEON LECRAFT**

───────────────

Nardine Mary Guirguis
GUIRGUIS LAW, PA
434 Fayetteville Street
Raleigh, North Carolina 27601
(919) 832-0500
nardine@guirguislaw.com

*Counsel for Appellant*                                    July 29, 2013

**LANTAGNE LEGAL PRINTING** 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477
A Division of Lantagne Duplicating Services

# TABLE OF CONTENTS

**Page(s)**

Table of Cases, Statutes, and Authorities ................................................................ iii

Statement of Jurisdiction ................................................................................1

Issues Presented for Review ..........................................................................1

Statement of the Case ....................................................................................1

Statement of the Facts ...................................................................................3

Summary of Arguments ................................................................................9

Arguments ...................................................................................................12

    I.  THE DISTRICT COURT ERRED WHEN IT DID NOT
        GRANT MR. LECRAFT'S MOTION TO SUPPRESS THE
        FIREARM OBTAINED FROM HIS PERSON AND THE
        STATEMENTS HE LATER MADE. ...................................................12

        A.  Standard of Review ................................................................12

        B.  Argument .................................................................................13

            1.  Appellant LeCraft's Fourth Amendment rights were
                violated when the officer who stopped him
                unreasonably prolonged the initial stop. ...................................13

            2.  The district court erred in their factual finding that
                Officer Morrison-Brown asked for and obtained
                consent for the search of Mr. LeCraft's person........................18

            3.  Any inculpatory statements made by Mr. LeCraft
                were made in violation of his Fifth Amendment
                Rights and Fourth Amendment Rights, and thus
                should be suppressed. ................................................................19

i

II. UNAVAILABILITY OF THE TRANSCRIPTS FOR THE
RULE 11 HEARING HELD ON MAY 31, 2012 IS
PREJUDICIAL TO THE APPEAL BECAUSE THERE IS
NO ADEQUATE RECORD FROM WHICH TO
ASCERTAIN THAT APPELLANT LECRAFT
KNOWINGLY AND INTELLIGENTLY PLED GUILTY ...............20

    A. Standard of Review ........................................................20

    B. Argument ......................................................................21

        1. The unavailability of the Rule 11 Transcript
           prevents Appellant LeCraft from exercising his right
           to a meaningful appeal. .........................................21

        2. Appellant LeCraft's appeal is prejudiced by the
           unavailability of the transcript in that there is no
           way to verify that his Constitutional rights were
           upheld. .....................................................................24

        3. The district court's order adopting the government's
           position was improper and incomplete...................28

III. THE DISTRICT COURT ERRED IN NOT PERMITTING
COUNSEL OF RECORD TO WITHDRAW AND
PROVIDE APPELLANT LECRAFT WITH SUBSTITUTE
COUNSEL...........................................................................30

    A. Standard of Review ........................................................30

    B. Argument ......................................................................30

Conclusion .....................................................................................33

Request for Oral Argument .............................................................35

ii

Certificate of Compliance with Typeface and Length Limitations ......................... 36

Certificate of Service of Brief and Appendix .......................................................... 37

# TABLE OF CASES, STATUTES, AUTHORITIES, CONSTITUTION AND RULES

## CASES

*Caplin & Drysdale, Chartered v. United States,*
491 U.S. 617 (1989)...................................................................... 31

*Delaware v. Prouse,*
440 U.S. 648 (1979)....................................................................13, 14

*Florida v. Royer,*
460 U.S. 491(1983).......................................................................15

*Hardy v. United States,*
375 U.S. 277(1964).......................................................................21

*Herron v. United States,*
512 F. 2d 439 (4th Cir. 1975) ......................................................22, 23

*McCarthy v. United States,*
394 U.S. 459 (1969)....................................................................11, 22, 23

*Mickens v. Taylor,*
535 U.S. 162 (2002)....................................................................11, 30

*Miranda v. Arizona,*
384 U.S. 436 (1966)....................................................................20

*Taylor v. Alabama,*
457 U.S. 687 (1982)....................................................................17

*Terry v. Ohio,*
392 U.S. 1(1968).......................................................................14, 15, 16

*United States v. Brown,*
202 F. 3d 691 (4th Cir. 2000) ..................................................20, 24

*United States v. Calandra*
414 U.S. 338 (1974).......................................................................20

iv

*United States v. Caldwell*,
    No. 95-543 1999 WL 1037508*5 (4th Cir. Nov. 16, 1999)...................25, 26

*United States v. Clarkson*,
    551 F. 3d 1196 (10th Cir. 2009) ...................................................15

*United States v. Corporan-Cuevas*,
    35 F. 3d 953 (4th Cir. 1994) ........................................................30

*United States v. Edgerton*,
    438 F. 3d 1043 (10th Cir. 2006) ..................................................18

*United States v. Gallop*,
    838 F. 2d 105 (4th Cir. 1988), cert. denied, 487 U.S. 1211, ...108 S.Ct. 2858,
    101 L.Ed.2d 895 (1988). ........................................11, 12, 31, 32, 33

*United States v. Gastelum*,
    16 F. 3d 996 (9th Cir. 1994) ...........................................11, 29, 30

*United States v. Gillis*,
    773 F. 2d 549 (4th Cir. 1985) ......................................................21

*United States v. Hassan El*,
    5 F. 3d 726 (4th Cir. 1993) .........................................................13

*United States v. Hensley*,
    469 U.S. 221 (1985)...................................................................13

*United States v. Huggins*,
    191 F. 3d 532 (4th Cir. 1999) ......................................................21

*United States v. Manbeck*,
    744 F. 2d 360 (4th Cir. 1984) ......................................................17

*United States v. Mullen*,
    32 F. 3d 891(4th Cir. 1994 ) ........................................................31

*United States v. Ramapuram,*
   632 F. 2d 1149 (4th Cir. 1980), cert. denied, 450 U.S. 1030, 101 S.Ct.
   1739, 68 L.Ed.2d 225 (1981). ...............................................................12, 13

*United States v. Rusher*
   966 F. 2d 868 (4th Cir. 1992) .......................................................................12

*United States v. Terzado-Madruga*
   897 F. 2d 1099 (11th Cir. 1990) ...................................................................19

*United States v. Wilson,*
   205 F. 3d 720 (4th Cir. 2000) ................................................................10, 13

*Weeks v. United States,*
   232 U.S. 383 (1914).................................................................................19, 20

*Whren v. United States,*
   517 U.S. 806 (1996)......................................................................................13

## STATUTES, AUTHORITIES AND THE CONSTITUTION

18 U.S.C. § 922(g)(1)..............................................................................2, 4

18 U.S.C. § 922(j) ...................................................................................2, 4

18 U.S.C. § 924 .......................................................................................2, 4

18 U.S.C. § 3231 .........................................................................................1

28 U.S.C. § 1291 .........................................................................................1

Court Reporter Act, 28 U.S.C. Section 753(b) .....................20, 21, 22, 23

U.S. Const. amend. IV.  ..................................9, 13, 14, 17, 18, 19, 20, 33

U.S. Const. amend. V. ...........................................................9, 19, 20, 33

U.S. Const. amend. VI.  ..........................................11, 12, 30, 31, 34

# RULES

Federal Rule of Appellate Procedure 10(c) ............................................................20

Federal Rule of Criminal Procedure 11(c)(3) ........................................................30

Federal Rule of Criminal Procedure 11(c)(4) ........................................................30

Federal Rule of Criminal Procedure 11(h) ...........................................................23n

## STATEMENT OF JURISDICTION

The United States District Court for the Eastern District of North Carolina had jurisdiction over this matter pursuant to Title 18 U.S.C. Sec. 3231. The Notice of Appeal was timely filed on January 10, 2013. This Court has jurisdiction to hear this matter pursuant to Title 28 U.S.C. Sec. 1291 as there has been a final adjudication on the merits by a United States District Court.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. WHETHER THE DISTRICT COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE SEIZED AND STATEMENTS GIVEN SUBSEQUENT TO A POLICE STOP AND SEARCH OF A VEHICLE DRIVEN BY THE APPELLANT.

2. WHETHER THE UNAVAILABILITY OF THE TRANSCRIPTS FOR THE RULE 11 HEARING HELD ON MAY 31, 2012 IS PREJUDICIAL TO THE APPEAL.

3. WHETHER THE DISTRICT COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO WITHDRAW AS COUNSEL.

## STATEMENT OF THE CASE

Appellant, Robert Leon LeCraft, was indicted on March 24, 2010. (J.A. 23). Count one of the Indictment charged that the Appellant, having been previously convicted of a crime punishable by a term of imprisonment

exceeding one (1) year, did knowingly possess in and affecting commerce, a firearm, violation of  Title 18, U.S.C. Sections 922(g)(1) and 924.  (*Id*.). Count two of the Indictment charged that the Appellant knowingly possessed a stolen firearm, and that he knew or had reasonable cause to believe that the firearm was stolen, in violation of Title 18, United States Code, Section 922(j) and 924. (J.A. 23-24).

On April 14, 2010 the Defendant filed Request for discovery. (J.A. 4). Thereafter, on August 25, 2010 the Defendant filed a Motion to Suppress. (J.A. 7). The Suppression Hearing was held on September 20, 2010. (J.A. 25). The district court afterwards adopted the Magistrate Judge's recommendations and accordingly denied the Defendant's Motion to Suppress. (J.A. 166).

On January 13, 2012, the Defendant was ordered to have a second psychiatric examination. (J.A. 167 - 169). The competency hearing was subsequently conducted in front of a Magistrate Judge on May 16, 2012, when the Defendant was found competent to proceed despite testimony indicating that he had at least minimal dementia. (J.A. 182 – 201).

Thereafter it appears on May 31, 2012, Mr. LeCraft entered a provisional plea of guilty to Count One of the Indictment, while reserving

the right to appeal the Court's Order denying the Defendant's Motion to Suppress. (J.A. 270- 275). However, the district court inadvertently failed to record these proceedings, and thus no transcripts of this hearing were produced. (J.A. 264 – 269). For purposes of this Appeal, the district court eventually adopted the government's position regarding the alleged events that took place during this hearing. (*Id.*).

At the time of Sentencing, the Government moved to dismiss Count Two of the Indictment on January 10, 2013. (J.A. 245). On the same date, Mr. LeCraft's defense counsel's Motion to Withdraw was denied by the district court. (J.A. 232). The Court then sentenced Mr. LeCraft to the custody of the Bureau of Prisons for a period of one hundred and eighty (180) months. (J.A. 239). Directly after Sentencing on January 10, 2013 while still in open court, Appellant LeCraft timely filed and served his Notice of Appeal. (J.A. 251).

## **STATEMENT OF FACTS**

Appellant LeCraft was named in a Two Count Indictment in the United States District Court of the Eastern District of North Carolina. (J.A. 23 - 24). Count One charged Appellant with possessing a firearm after being convicted of a crime punishable by a term exceeding one year in

3

violation of Title 18 U.S.C. §§ 922(g)(1) and 924; and Count Two of the Indictment charged that the Appellant knowingly possessed a stolen firearm in violation of Title 18 U.S.C. §§ 922(j) and 924.  (*Id*.).

At the time this case was pending, Appellant LeCraft was a sixty-seven (67) year old illiterate black male from rural North Carolina who suffered from dementia. (J.A. 182 – 201). He was initially stopped by a New Bern Police Officer on August 7, 2009 for an alleged stop-sign violation. There was no probable cause to search his vehicle, yet the officer that had stopped him had made up her mind that she was going to search it anyways. (J.A. 52 – 53). She purportedly attempted to obtain consent to search his vehicle and yet proceeded to first search him and then the vehicle. (J.A. 38 – 39). After providing Mr. LeCraft with the warning citation, the officer told Mr. LeCraft to exit his vehicle and that she, the officer, was going to search his person. (J.A. 40 – 42). Upon informing him that she was going to search his person, Mr. LeCraft informed her of the firearm on his person. (J.A. 42 – 43). Consequently, Mr. LeCraft was charged with an offense related to firearms. (J.A. 110).

Thereafter, a second officer, who had been assisting the initial officer at the traffic stop, transported Mr. LeCraft to the New Bern police station.

4

(J.A. 36-46). Neither this New Bern police officer nor any other law enforcement officer read Mr. LeCraft his Miranda rights despite the fact that he was interrogated about other matters which could have very easily lead him to divulge incriminating statements regarding his pending firearm's charge. (J.A. 89 – 92). Accordingly, during his interrogation Mr. LeCraft discussed both related and unrelated matters to his pending charge. (J.A. 102 – 106). Specifically, he informed law enforcement that he had the weapon because he had been robbed several times in the past. (J.A. 105 – 106).

Eventually on March 24, 2010 Mr. LeCraft was indicted on the above referenced federal charges.   (J.A. 23 – 24). During the pendency of his federal case it became apparent that Mr. LeCraft was not your "normal" defendant in that it was difficult for him to understand or coherently communicate about the matters associated with his case.  (J.A. 167 – 169). Consequently, there was an initial evaluation conducted on Mr. LeCraft where Dr. Rebecca E. Perkins at the Butner Federal Medical Center evaluated Mr. LeCraft for months. (J.A. 167). Dr. Perkins "made a provisional diagnosis that the defendant had Dementia, Not Otherwise Specified." (*Id.*).   As the district court further noted from Dr. Perkins evaluation that "his cognitive deficits could potentially deteriorate over time.

5

As a result his prognosis is judged to be guarded." (*Id*.). There was a second evaluation ordered to be conducted by the district court. (*Id.*).

Mr. LeCraft's Competency Hearing was then held in magistrate court on May 16, 2012. (J.A. 170 – 172). The second evaluation was conducted for a little less than one month and a half, from February 9 through March 23, 2012. (J.A. 177). Dr. Cunic, the second evaluator, found that Mr. LeCraft was in fact being honest and not malingering. (J.A. 179). She continued to indicate that her diagnosis was also provisional, as was Dr. Perkins'. A provisional diagnosis was defined by Dr. Cunic "as a way of saying, 'I think this is what's going on but there are lots of other variables that may be contributing to the way that one is presenting,' and so one is not exactly sure." (J.A. 194).

During the Competency Hearing Dr. Cunic continued to discuss other issues regarding Mr. LeCraft's case, such as, but not limited to, his history of head trauma, his history of medical conditions, and being previously hospitalized for psychosis. (J.A. 194). She further indicated that he does have memory loss as well. (*Id*.). Although she found him to be competent to proceed, she did indicate at a minimum she also found him to have Dementia. (J.A. 182). Moreover, it was identified that the defense counsel at

6

the time had difficulty communicating with the Defendant as well. (J.A. 206). At the close of the Competency Hearing, the magistrate court went on to find that he was competent to proceed and stand trial. (J.A. 200 - 201).

Directly after the competency hearing Mr. LeCraft had questions regarding his plea and sentencing, to which the Magistrate Judge directed him to make these request to the District Court Judge.[1] Although it appears initially Mr. LeCraft did not want to proceed to arraignment in front of a Magistrate Judge, he eventually "nodded affirmatively" and proceeded to plea not guilty. (J.A. 203 – 204, 215).

Thereafter on May 31, 2012, Mr. LeCraft entered a plea of guilty pursuant to a conditional plea agreement to Count One of the Indictment reserving the right to appeal the decision regarding the Motion to Suppress. (J.A. 270 – 275).[2] Unfortunately, the discussion regarding the plea agreement including the specific questions and responses, the plea colloquy, and any and all waivers that need to be addressed during a Rule 11 Hearing

---

[1] Unfortunately, due to the non-existence of the transcripts for the Rule 11 Hearing held on May 31, 2012 in district court, we are unaware of whether or not those or any other questions Appellant LeCraft had regarding pleading were ever properly addressed by the district court.

[2] This information was solely obtained from the written Plea Agreement. Since Mr. LeCraft is indisputably known to be illiterate it is unknown whether or not he knew what he signed. (J.A. 190).

7

are missing here because the transcripts of the Hearing that was conducted on May 31, 2012 are non-existent. (J.A. 254). This hearing was done during the district court's "lunch break in the middle of a (6) week trial". (J.A. 255). Thus, these proceedings were interjected mid-day during an exhaustive trial without a Court Reporter present. (*Id.*). Given that it appears the Court Reporter was absent from the proceedings, there are no Court Transcripts for this very important Rule 11 Hearing where Mr. LeCraft was to have waived some very valuable Constitutional Rights. (*Id.*)

Thereafter Mr. LeCraft's counsel of record at the time filed a Motion to Withdraw on January 2, 2013. (J.A. 217 - 218). The Court held the Sentencing of this matter on January 10, 2013. (J.A. 220 – 244). Mr. LeCraft, yet again, discussed several matters with the Court and appeared to be confused about his sentence. (J.A. 237 – 238). He indicated that his attorney had informed him of a completely different sentence and was focused on a 1991 conviction. (J.A. 237). He himself appeared to object to the validity of this conviction and what he believed increased his sentence. (J.A. 241). That being said, the defense counsel did not make any objections of this sort, or otherwise, despite the fact that he indicated that he had reviewed the Presentence Report with Mr. LeCraft. (J.A. 290). On the other

hand, Mr. LeCraft stated that he did not review the Presentence Report with his defense counsel and that he was under the impression that his sentence would be around two (2) years. (J.A. 238). The Court proceeded and did not allow defense counsel to withdraw, and sentenced the Defendant as an Armed Career Criminal to fifteen (15) years. (J.A. 232, 239).

## SUMMARY OF THE ARGUMENTS

The district court erred when it denied the Appellant LeCraft's Motion to Suppress. (J.A. 153 – 166). Mr. LeCraft's initial stop was for a minor traffic violation.  (J.A. 51). Thus, after the warning citation was handed to the defendant there was no reason to further detain Mr. LeCraft. (J.A. 51 - 53). The officer did not allow Mr. LeCraft to leave and indicated to him that she would be searching his person after she told him to exit his vehicle. (J.A. 53 – 59).  It was then that the Appellant LeCraft had to inform her of the firearm on his person. (J.A. 61). He was subsequently charged with a firearms violation and further questioned by other law enforcement officers. (J.A. 74 – 76, 106 – 115). At the time of his custodial interrogations, Appellant LeCraft was not Mirandized. (*Id*.). Accordingly, both the firearm seized and the statements made were obtained in violation of his Fourth and Fifth Amendment rights against unreasonable searches and seizures, and

thus should have been suppressed. *United States v. Wilson*, 205 F.3d 720 (4th Cir. 2000).

The transcripts for the crucial Rule 11 Hearing held on May 31, 2012 are entirely missing from the record on appeal, as the recording device was never activated during this proceeding. (J.A. 252 – 253). The best means available to Appellant LeCraft by which the record could attempt to reflect what transpired during the Rule 11 Hearing were insufficient to warrant a showing that the Defendant knowingly and intelligently pled guilty, and in so doing knowingly and intelligently also waived certain valuable Constitutional rights when pleading guilty pursuant to the underlying plea agreement. (J.A. 254 – 257). Furthermore, the government's position on what transpired during the Rule 11 Hearing held on May 31, 2012 was exaggerated and biased, and covered other matters that were not part of the Rule 11 Hearing held on May 31, 2012. (J.A. 258 – 263).

Thus, the district court erred in adopting the government's position regarding the record for this hearing, and accordingly prejudiced the Appellant LeCraft's appeal. (J.A. 264 – 269).  It is imperative that the Defendant be aware of his rights at the time he pleads, and if there are no transcripts to verify this when the Defendant appears to be unaware of what

10

transpired and the consequences of his plea then he is clearly prejudiced. *United States v. Gastelum*, 16 F.3d 996 (9th Cir. 1994). Appellant LeCraft believed he was pleading to a charge that would have resulted in a sentence around twenty-three (23) months. (J.A. 254).[3] In view of that, it appears that it is highly likely that Appellant LeCraft was not properly informed of the possible punishments associated with his plea at the time he pled guilty. Such an extreme prejudice to the Appellant LeCraft warrants a new trial. *McCarthy v. United States*, 394 U.S. 459 (1969).

Lastly, the district court erred when it did not permit counsel to withdraw. (J.A. 232). The Sixth Amendment right to counsel is premised on the notion that counsel is to effectively assist the defendant in obtaining a fair trial. *Mickens v. Taylor*, 535 U.S. 162 (2002). However, when there is a complete break down in communication and counsel is no longer able to communicate with the defendant then the Sixth Amendment right to counsel is violated. *United States v. Gallop*, 838 F.2d 105 (4th Cir.), cert. denied, 487 U.S. 1211, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). This violation can

---

[3] The Appellant LeCraft's position regarding him not being aware of the appropriate penalties of the charge he believed he was pleading to is further corroborated by his own statements made to the Court at the time of his sentencing. (J.A. 238). He specifically stated that he did not understand what he was being sentenced to, and the punishment that he was receiving. *(Id.)*.

11

be ascertained through an inquiry made by the court hearing the motion to withdraw as to whether or not good cause is shown. *Id.* However, when an inquiry is missing then it is impossible to inquire whether or not good cause was present so as to prevent the defendant from obtaining a fair trial within the meaning of the Sixth Amendment. *Id.* Accordingly, the district court erred in the case sub judice when it failed to inquire about whether or not good cause was present to permit counsel to withdraw and substitute new counsel for Appellant LeCraft in order to ensure that his Sixth Amendment right to counsel was not violated.

## **ARGUMENTS**

I.   THE DISTRICT COURT ERRED WHEN IT DID NOT GRANT MR. LECRAFT'S MOTION TO SUPPRESS THE FIREARM OBTAINED FROM HIS PERSON AND THE STATEMENTS HE LATER MADE.

### A.      **Standard of Review**

This Court reviews de novo any legal conclusions the district court found in its decision regarding suppression; however, this Court reviews any of the district court's factual findings underlying the legal conclusions with a clearly erroneous standard. *United States v. Rusher,* 966 F.2d 868, 873 (4th Cir. 1992) (citing *United States v. Ramapuram,* 632 F.2d 1149, 1155 (4th

Cir. 1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981).

### B.      Argument

### 1.   Appellant LeCraft's Fourth Amendment rights were violated when the officer who stopped him unreasonably prolonged the initial traffic stop.

The Fourth Amendment provides that the people are "to be secure in their persons ... against unreasonable searches and seizures ... and no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV. Under well-settled Fourth Amendment law, a traffic stop involves a seizure of the driver "even though the purpose of the stop is limited and the resulting detention quite brief."  *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *see also Whren v. United States*, 517 U.S. 806, 809-810 (1996); *United States v. Hensley*, 469 U.S. 221, 226 (1985).  The Fourth Amendment thus mandates that such seizure of the individual "be justified by […] a reasonable suspicion, based on specific articulable facts of unlawful conduct."  *United States v. Wilson*, 205 F.3d 720, 722-23 (4th Cir. 2000) (quoting *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993).  Reasonable suspicion is not based upon either unparticularized suspicion or simply a "hunch" that police may have that the individual may be involved in criminal activity."

*Terry v. Ohio*, 392 U.S. 1, 27 (1968).

Appellant LeCraft moved to have the court suppress all evidence and statements obtained in violation of his Fourth Amendment rights against unreasonable searches and seizures and that proper consent was not obtained by law enforcement. The basis of this motion is the Defendant's Fourth Amendment rights against unreasonable searches and seizures were violated because the officers lacked reasonable and articulable suspicion to extend his detention.

The Supreme Court has indisputably held that a routine traffic stop is in fact within the purview of what is constitutionally connoted as a "seizure" under the Fourth Amendment. Accordingly, the Fourth Amendment's protections apply in circumstances surrounding the inception and continued encounter with law enforcement during a routinely conducted traffic stop. *Delaware v. Prouse*, 440 U.S. 648 (1979). The inception of such traffic stops are regularly conducted with a corresponding routine set of questions related to matters such as "license, registration, and insurance." During the initial stages of these types of traffic stops, so long as the stop is predicated upon reasonable suspicion that traffic like violation(s) has/have occurred by the driver, are Constitutionally permitted and are commonly accepted under

14

the previously referenced Fourth Amendment analysis. *See generally Terry v. Ohio*, 392 U.S. 1 (1968).

However, it is imperative to emphasize after initially approaching the driver and asking him/her the mundane and routine questions regarding his/her vehicle, registration, and insurance; and dispelling the basis by which the traffic stop is premised upon; that unless there are additional specific articulable facts of unlawful conduct the officer must let the driver go. *United States v. Clarkson*, 551 F.3d 1196 (10th Cir. 2009). The continued detention under those circumstances would violate the driver's Fourth Amendment rights against unreasonable seizures, being that there is no "acquired reasonable suspicion of further criminal activity." *Id.* at 1201.

A person "may not be detained even momentarily without reasonable, objective grounds for doing so[.]" *Florida v. Royer*, 460 U.S. 491, 498, 75 L.Ed.2d 229, 236 (1983) (emphasis added). Any detention lasting beyond what is required to investigate the concerns justifying the initial stop must be supported by additional reasonable articulable suspicion. Information constituting reasonable suspicion must have been obtained prior to the extension that it seeks to justify. Absent such suspicion, the extended stop is lawful only if it has been converted into a consensual encounter.

15

On August 7, 2009 Officer Morrison-Brown cited Mr. LeCraft in a warning ticket for failing to stop at a stop sign and then told him to exit his vehicle. (J.A. 40 – 42). However, prior to the issuance of the warning, Sgt. Daniels approached her in her vehicle and "asked her if she was familiar with LeCraft and of his criminal history." (J.A. 85). There were no additional articulable facts to indicate criminal activity was afoot in order to substantiate further detention after she provided Mr. LeCraft with the warning citation. *Terry v. Ohio*, 392 U.S. 1 (1968). He abided by all her initial requests and responded to all of her regularly asked questions, that law enforcement routinely ask of drivers directly following the stop upon approaching the driver's window. (J.A. 35 and 51 - 52). She then issued him a citation for what she claimed to be the reasoning for the stop. (J.A. 38 – 42). The only additional facts that she then received at that time, were from her Sergeant. (J.A. 70). This is not the type of information that could be legally deemed to prove acquired reasonable suspicion of further criminal activity. If anything, it was used improperly to advance her own purposes in attempting to obtain further criminal information from him without any reasonable suspicion to continue his detention.

16

The court found that Defendant's argument that the stop was unlawfully prolonged to be without merit. Here, the scope of the original traffic stop concerned nothing more than the Defendant's alleged stop sign violation.   Officer Morrison-Brown violated Defendant's constitutional rights by exceeding the lawful scope of the stop-sign violation investigation that justified the stop. Defendant's rights under the Fourth Amendment to the United States Constitution were violated when an initially lawful traffic stop was extended beyond the original justification for the stop.

In *Taylor v. Alabama*, law enforcement's conduct surrounding the defendant's investigatory arrest was without probable cause. 457 U.S. 687 (1982).  Consequently their arrest of him was illegal. The officers in *Taylor* allowed their conduct towards the defendant be driven by their hopes to have something "turn up." *Id*. at 693. Probable cause is the "facts and circumstances within the officer's knowledge [which] would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Manbeck,* 744 F.2d 360, 376 (4th Cir. 1984).

Similar to the facts surrounding the designed purpose incorporated in the police conduct in *Taylor*, Mr. LeCraft's stop was also supposed to serve as a means for the officers to have an opportunity to effectuate their purpose

17

in pursuing a fishing expedition in hopes for something to "turn up." (J.A. 53). Mr. LeCraft was stopped for a traffic violation. (J.A. 51). During the initial stop, he complied with the officer's regular and routine requests prior to receiving a warning ticket for failing to stop at a stop sign. (J.A. 35 and 51 - 52). However, he was still not allowed to freely be on his way. On the contrary, Mr. LeCraft was eventually arrested for a firearm violation after he was told to exit his vehicle so the officer could search his person. (J.A. 53 – 62).

In conclusion, the officers' detention of Mr. LeCraft and his vehicle exceeded the scope of the underlying justification for the stop. Given that there was no reason to further investigate after Officer Morrison-Brown handed Mr. LeCraft the warning citation, at that point forward the stop was unreasonably extended and is an unreasonable seizure in violation of his Fourth Amendment rights. *United States v. Edgerton*, 438 F.3d 1043, 1044 (10th Cir. 2006).

**2. The district court erred in their factual finding that Officer Morrison-Brown asked for and obtained consent for the search of Mr. LeCraft's person.**

Officer Morrison-Brown did not appear to ask for and obtain voluntary consent for both the search of Mr. LeCraft's car and his person.

18

(J.A. 60 – 63). Her report did not indicate that she received consent to search his person either. (*Id.*)  The detective did ask for and receive consent for the search of his car, however she did not clearly testify that she asked for permission to search his person independent of the request to search his vehicle. Moreover, she provided no explanation as to why her report would indicate that she did not ask to search his person. (J.A. 62).  She also testified that she knew she was going to search Mr. LeCraft's car, prior to even asking him to do so. (J.A. 53). However, she did not mention anything regarding searching his person at this time; thus, showing that the questions she likely formulated had not included the search of his person. (*Id.*). However, she did state that she informed the Defendant that she would have to search his person after she told him to exit the vehicle, (which was before she searched the vehicle). (J.A. 40 – 42).

### 3. Any inculpatory statements made by Mr. LeCraft were made in violation of his Fifth Amendment Rights and Fourth Amendment Rights, and thus should also be suppressed.

Under the exclusionary rule, evidence obtained in an encounter that is in violation of the Fourth Amendment cannot be used in a criminal trial against the victim of the illegal search and seizure. *United States v. Terzado-Madruga,* 897 F.2d 1099, 1112 (11th Cir. 1990). *See also Weeks v. United*

*States,* 232 U.S. 383, 391- 93 (1914).   According to the United States Supreme Court, the "prime purpose" of the exclusionary rule is "to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures."   *United States v. Calandra*, 414 U.S. 338, 347 (1974).   Mr. LeCraft's Fourth Amendment right to be free from unreasonable seizure was violated when the officer continued detention of his person even after the issuance of the warning ticket.   Accordingly, any inculpatory statements allegedly made by Mr. LeCraft are not only properly suppressed under *Miranda*, given that they were obtained in violation of his Fifth Amendment Rights, but also are properly suppressed because they were obtained as a result of violating his Fourth Amendment rights.   *Miranda v. Arizona*, 384 U.S. 436 (1966).

## II.  UNAVAILABILITY OF THE TRANSCRIPTS FOR THE RULE 11 HEARING HELD ON MAY 31, 2012 IS PREJUDICIAL TO THE APPEAL BECAUSE THERE IS NO ADEQUATE RECORD FROM WHICH TO ASCERTAIN THAT APPELLANT LECRAFT KNOWINGLY AND INTELLIGENTLY PLED GUILTY.

### A.    Standard of Review

This Court reviews de novo the district court's compliance with the Court Reporter Act, 28 U.S.C. Section 753(b), and Fed. R. App. P. 10(c). *United States v. Brown*, 202 F.3d 691, 696 (4th Cir., 1999).

**B.    Argument**

**1. The unavailability of the Rule 11 Transcript prevents Appellant LeCraft from exercising his right to a meaningful appeal**

The Court Reporter Act mandates that there be a complete transcript of the trial proceedings held in district court.  "A criminal defendant has a right to a meaningful appeal based on a complete transcript." *United States v. Huggins*, 191 F.3d 532, 536 (4th Cir. 1999).  *See also Hardy v. United States*, 375 U.S. 277, 279 (1964).  Accordingly, the Court is to review the nature of the deficiency and omission within the transcripts of the proceedings to determine prejudice. However, when a transcript is wholly non-existent then the omission and deficiency is of the greatest nature, thus, allowing the Court to provide relief without any further analysis regarding the nature of the deficiency. It is in this type of grave omission and deficiency that a new trial would be justified because the non-existence of the transcripts for the quintessential Rule 11 Hearing where the Appellant/Defendant LeCraft pled guilty "specifically prejudices his appeal …" because there is no way to verify that his rights have not been violated. *United States v. Gillis*, 773 F.2d 549, 554 (4th Cir. 1985).

21

In *Herron v. United States*, 512 F.2d 439 (4th Cir. 1975), the Court says Rule 11 is implemented by 28 U.S.C. § 753(b). On appeal there was no record of the proceeding at which Herron's plea of guilty was tendered. In denying Herron's 2255 motion the district court said that the plea was taken in open court and evidence to show a factual basis for the plea was received, but the court fails to state whether the proceedings were reported. The appellate court stated, "In any event, whether the proceedings were not reported, or, if reported, whether the notes were not filed in accordance with §753(b), or, if filed, were subsequently lost by the magistrate or the clerk, we think that *McCarthy v. United States* […], requires that defendant's §2255 motion be granted, that his guilty plea be stricken, and the he be permitted to plead anew." 512 F.2d 439, 441. *McCarthy,* held that the literal compliance with the provision of Rule 11 requiring the district court to address a defendant personally to ascertain the voluntariness of a guilty plea and to satisfy himself that there is a factual basis for the plea was mandatory; and if literal compliance was not forthcoming, a defendant has the right to avoid the plea and to plead anew.[4] *McCarthy v. United States*, 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969).

---

[4] Strict adherence is no longer required by statute if the court has conducted a

22

The *Herron* court goes on to say:

> [e]ven if the district judge's compliance with Rule 11, as he certified, was full compliance with the rule, we think that *McCarthy* and its rationale apply no less to the provision of §753(b) that the showing that there was a basis in fact for the plea be reported, that the record be filed and that the record be preserved for the requite period. A failure of strict compliance on the part of the district judge, the court reporter, or the court clerk, as the case may be, will only result in unnecessary post-conviction hearings to determine what was done when the most accurate record is a transcript of what actually took place. *Id*.

The Court used the unavailability of the plea transcript in order to reverse and remand Herron's case to the district court.

The transcript error in *Herron* is directly on point with the case at hand. Mr. LeCraft is unable to exercise his right to a meaningful appeal without an unbiased record from which to proceed. The Rule 11 proceedings are part of the appellant's basis of appeal. As the Rule 11 hearing was never recorded, there are no omissions nor deficiencies for this Court to analyze.

---

harmless error, under subdivision (h) of Rule 11. The Notes of the Advisory Committee to the 1983 Amendment clearly emphasize that "the kinds of Rule 11 violations which might be found to constitute harmless error upon direct appeal are fairly limited."

23

### 2. Appellant LeCraft's appeal is prejudiced by the unavailability of the transcript in that there is no way to verify that his Constitutional rights were upheld.

The district court's order for LeCraft uses *United States v. Brown*, 202 F.3d 691 (4th Cir., 1999), as an example of an accepted district court approach to settlement and approval for the unavailability of a transcript. In *Brown*, the district court lost only part of the transcript relating to the recusal hearing at issue. Brown then filed a statement of the hearing, and the Government responded with its own statement. After the district court adopted the Government's statement, the defendant argued to the Fourth Circuit that the lack of the transcript for the hearing required a new trial. The appellate court rejected this argument reasoning that because Brown did not even argue that there were discrepancies between the Government's version and his own recollection, the missing transcript did not prejudice his appeal. Brown's argument merely claimed that he was not informed of the precise federal charges his attorney had been convicted of and that he did not see the Government's recusal motion at the recusal hearing. The appellate court said these arguments are irrelevant in light of Brown's concession that when he waived his attorney's conflict, he knew and understood the core of the Government's recusal motion.

However, in the case sub judice, Appellant LeCraft does not concede that he knowingly and intelligently entered the plea agreement. LeCraft was told that he would receive a sentence of (23) twenty-three months with his plea of guilty. The only other unbiased recount of the proceedings in the record is the notes from the district court's civil case administrator. In these notes, there is no record of the district court ensuring that Mr. LeCraft understood what he was agreeing to or further explaining the Plea Agreement, and what it encompassed; such as, but not limited to the Appeal waivers.[5] The notes only show that the court informed him of rights, charges and penalties, but not what those rights, charges, or penalties were in his case. They show that he entered freely and voluntarily as well. These do not equate to knowingly and intelligently.[6]

Furthermore, the district court's order for LeCraft uses unpublished opinion *United States v.Caldwell*, No. 95-543, 1999 WL 1037508*5 (4th Cir. Nov. 16, 1999), to attempt to establish the requirement of "specific

---

[5] It has to also be considered that the Appellant LeCraft had dementia and accordingly had a difficult time remembering and fully understanding the facts and circumstances surrounding him. (J.A. 167 – 169 and 182 – 201). Thus, making it that much more important to ensure that he understood what he was doing when he entered his plea of guilty.

[6] These were conclusory statements without further detailed explanation; however, they were the best source available.

25

prejudice" in order to obtain relief on appeal (J.A. 267). In *Caldwell*, the Appellant/Defendant argued that without a sentencing transcript, or an informed account of the sentencing proceeding, the court could not effectively review whether the sentencing was conducted properly. However, Caldwell was specifically arguing as the basis of his appeal the classification as an armed career criminal. In his case, the Court ruled that Caldwell failed to show any "specific prejudice" because the presentence report clearly indicated that Caldwell was initially classified as an armed career criminal.

Conversely, in the case sub judice, Mr. LeCraft is truly prejudiced as the basis of his appeal is the knowing and voluntary nature of his guilty plea. There is no unbiased sufficient record of the events of the hearing, nor are there other methods for which the courts have provided that these constitutional rights are shown to have been properly protected. The government goes out of their way to emphasize that the issues ripe for appeal were properly conducted, yet there is no mention of these constitutional protections in the court administrator's notes.

Additionally, the district court's order for LeCraft uses *Caldwell* to say there is no need to find specific findings regarding specific portions of

26

the record because opening briefs for appeal have not yet been filed**.**   It appears that the court is admitting that it does not need to determine whether a topic on appeal is prejudiced by the lack of transcripts because the topics are not yet established. The court also says that the statements as adopted by the district court are consistent and detailed with the court's recollection. However, it is abundantly clear that the case administrator's notes are not detailed at all. They merely state the basic protocol for a Rule 11 hearing with LeCraft's name imputed.

Under this analysis, Mr. LeCraft must be permitted to plead anew. Mr. LeCraft's Rule 11 hearing occurred during the lunch break of another trial over a year ago, and lasted for (24) twenty-four minutes. The court reporter was not present. (J.A. 255). The criminal case administrator was not present, so the civil case administrator stepped in to take notes. *Id*.   It is hypothesized that these absences are the reason that the recording device was not activated for the recording of the hearing.  If the court deviated from its usual protocol and procedure in the aforementioned manner, it is not inconceivable that other shortcuts could have been taken as well.

### 3.     The district court's order adopting the government's position was improper and incomplete.

The order adopted by the district court states that Appellant LeCraft's confusion is not in conflict with the Government's position because it is not an account of anything that took place during the Rule 11 Hearing. However, there are no transcripts to verify that Mr. LeCraft was not confused and did not display such confusion without being properly addressed during the Rule 11 hearing conducted by the court on May 31, 2012.[7]

Further, the district court incorrectly stated that the court administrator's notes of the Rule 11 Hearing on May 31, 2012 are consistent with the Government's account. The Government's account of events says, "The Court asked the defendant whether he understood that he was waiving his right to appeal his conviction and sentence as stated in the appeal waiver, and the defendant responded that he did." (J.A. 259-260). It goes on to say the court repeatedly ensured LeCraft understood everything. However, the

---

[7] It would be in line with the remaining hearings that we have transcripts for to conclude that the Appellant LeCraft was in fact confused and needed to have his confusion properly addressed by the Court during the Rule 11 Hearing so as to assure that he knowingly entered his plea of guilty.

court administrator's notes do not even mention this section and whether or not Appellant LeCraft had an understanding of his actions.

It is the Appellant LeCraft's contention that it would appear that the Government's recollection clearly exaggerates any discussions of LeCraft's understanding if the case administrator did not even note it. Moreover, the Government's account also says the court told LeCraft that any prison sentence told to him by his attorney was only a prediction and not binding on the court. (J.A. 260). On the other hand, the court administrator's notes do not speak to this at all. The administrator's notes only say Mr. LeCraft was informed of his charges and the penalties. (J.A. 256). Most concerning, it is unclear in the administrator's recollection of the possibility of Mr. LeCraft's receiving a  sentence of fifteen (15) fifteen years if he was determined to be an armed career criminal.  Mr. LeCraft believed that he was pleading guilty to a charge associated with a term of imprisonment of (23) twenty-three months, which is in sharp contrast to the possibility of being sentenced to a term of (15) fifteen years to life.

Moreover, the Government's recollection of events erroneously discusses in detail Mr. LeCraft's competency hearing, not the hearing associated with the missing transcript. In *United States v. Gastelum*, the

29

Court held that Rule 11 is not designed to ensure that a defendant is aware of the rights delineated in Rule 11(c)(3) and (c)(4) through his attorney or by the court at an initial appearance, but rather was "designed to ensure that the defendant is aware of those rights at the time he pleads guilty." 16 F.3d 996, 999 (9th Cir. 1994). It is Appellant LeCraft's position that he did not knowingly and intelligently plead guilty on May 31, 2012. Thus, it is prejudicial to Appellant LeCraft's appeal not to have any transcripts to this highly important proceeding to verify his position and to then have the district court improperly rely on the recollection of a biased party.

## III. THE DISTRICT COURT ERRED IN NOT PERMITTING COUNSEL OF RECORD TO WITHDRAW AND PROVIDE APPELLANT LECRAFT WITH SUBSTITUTE COUNSEL.

### A. Standard of Review

This Court reviews a district court's denial of a motion for substitution of counsel for an abuse of discretion. *United States v. Corporan-Cuevas,* 35 F.3d 953, 956 (4th Cir. 1994).

### B. Argument

The right to counsel "has been accorded … not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Mickens v. Taylor,* 535 U.S. 162, 166 (2002). The Sixth Amendment

provides that "[i]n all criminal prosecutions, the accused shall enjoy the right

. . . to have the Assistance of Counsel for his defense." The Sixth

Amendment guarantees a defendant the right to be represented by an

otherwise qualified attorney whom that defendant can afford to hire, or who

is willing to represent the defendant even though he is without funds."

*Caplin & Drysdale, Chartered v. United States*, 491 U. S. 617, 624-625

(1989).

The Defendant's request for substitute counsel is analyzed under the

Sixth Amendment right to effective assistance of counsel. However, the

Defendant's right to substitution of counsel is not an absolute right. *United

States v. Mullen*, 32 F.3d 891, 895 (4th Cir. 1994). That being said, if good

cause is presented, an indigent defendant may request another attorney.

*United States v. Gallop*, 838 F.2d 105, 108 (4th Cir.), cert. denied, 487 U.S.

1211, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). In determining whether the

district court abused its discretion in denying Appellant/Defendant's motion

for substitution of counsel, this Court considers the following factors:

"timeliness of the motion; adequacy of the court's inquiry into the

defendant's complaint; and whether the attorney/client conflict was so great

31

that it had resulted in total lack of communication preventing an adequate defense." *Gallop*, 838 F.2d at 108.

In the case sub judice the aforementioned factors show that the district court should have at least inquired into the nature or desire to obtain substitute counsel from Appellant LeCraft. However, the district court failed to inquire or discuss the breakdown of communication between Appellant LeCraft and counsel. It was unclear as to whether the attorney/client conflict was so great that Appellant LeCraft was unable to effectively proceed in assisting his attorney. *Id.*

Furthermore, it was also unclear as to when the attorney/client conflict arose and there was no inquiry made in court in order to ascertain the timing of this breakdown. Although the district court stated that it was the eve of sentencing that the motion to withdraw as counsel was filed, it was in actuality filed eight (8) days prior. (J.A. 222). Accordingly, it appears that the district court was not clear on the timeline surrounding the filing of the motion to withdraw perhaps lending itself to the court's lack of further inquiry due to a perceived lack of timeliness of the motion. Moreover, as there was little inquiry into the basis for the motion and more discussion on the factors of sentencing, there is no record from which to evaluate the

breakdown of communication between Appellant LeCraft and his attorney. Furthermore, Appellant LeCraft did have objections to the Presentence Report that he conveyed despite the lack of objections filed by his attorney of record at the time. (J.A. 227, 235). It would thus appear that there existed a breakdown in communication prior to the deadline for such objections to be made, which would have been more than (8) eight days before the Sentencing.

In conclusion, the district court abused its discretion in denying Appellant LeCraft's motion for substitution of counsel because it failed to inquire about the nature of Mr. LeCraft's complaint, and "whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." *Gallop*, 838 F.2d at 108.

## **<u>CONCLUSION</u>**

Appellant LeCraft was a sixty-seven (67) year-old illiterate, black male who faced documented issues related to dementia and mental illness throughout the proceedings. (J.A. 182 – 201). His rights were violated from the inception of the case. Appellant LeCraft's Fourth and Fifth Amendment rights were violated as a consequence of an unjustified extended detention. He did not provide lawful consent to prolong his encounter with law

33

enforcement that ultimately resulted in the charges at hand. On May 31, 2012, Appellant LeCraft unintelligently and unknowingly pled guilty. The unavailability of the transcript for this hearing prevents Mr. LeCraft from exercising his right to a meaningful appeal. His appeal is prejudiced as there is no sufficient means to verify that he knew what rights he was waiving, what he was pleading to, and the associated punishments. Finally, defense counsel's motion to withdraw should have been more thoroughly reviewed for whether or not just cause was present. The breakdown in communication between Appellant LeCraft and his defense counsel merited further inquiry in order to ensure his right to effective assistance of counsel under the Sixth Amendment. Therefore, Robert LeCraft, the Appellant herein, respectfully requests this Court vacate his conviction based on the aforementioned arguments and remand this case for a dismissal, or in the alternative a new trial.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Robert LeCraft respectfully requests oral argument in this matter because he believes that it would assist the Court in analyzing the issues raised in this appeal and the impact on the criminal justice system.


Respectfully submitted this 29th day of July 2013,

Nardine Mary Guirguis
By Counsel

/s/ Nardine Mary Guirguis
Nardine Mary Guirguis
GUIRGUIS LAW
434 Fayetteville St., Ste. 2350
Raleigh, NC 27601
Phone: (919)832-0500
Facsimile: (919) 246-9500
nardine@guirguislaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This Brief of the Appellant has been using Microsoft Word software, Times New Roman font, 14 point proportional type size.

2.    Exclusive of the table of contents; table of authorities; statement with respect to oral argument, any addendum containing statutes, rules, or regulations; and the certificates of compliance and service, this brief contains 7313 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so request, I will provide an electronic version of the brief and/or a copy of the word line print-out.

<u>/s/ Nardine Mary Guirguis</u>
Nardine Mary Guirguis

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of July, 2013, true and correct copies of the Brief of the Appellant and the Joint Appendix were filed with the Clerk, U.S. Court of Appeals via hand delivery and electronically using the Court's CM/ECF system, which will send notification of such filing to:

> KRISTINE L. FRITZ
> Assistant United States Attorney
> Office of the Unites States Attorney
> Suite 800
> Federal Building
> 310 New Bern Avenue
> Raleigh, NC 27601-1461
> Kristine.fritz@usdoj.gov

This the 29th day of July, 2013.

> /s/ Nardine Mary Guirguis
> Nardine Mary Guirguis
> GUIRGUIS LAW, PA
> 434 Fayetteville Street, Suite 2350
> Raleigh, North Carolina 27601
> (919) 832-0500
> N.C. State Bar No. 35319

37